## Kellner, Executor, v. Stahl.

*Wills — Probate after three years from death — Rights of intervening grantees—Mortgage—Heir setting up mortgage created by himself—Weakness of plaintiff's title—Ejectment—Act of April 1, 1909.*

1. Where a will is probated more than three years after the death of the testatrix, giving the estate to charities, and positively directing the executor to sell the real estate, and, in the meantime, two of three brothers, who are the heirs, sell their interests to the third brother, such third brother, in an action of ejectment against him by the executor, will be entitled to judgment in his favor under the Act of April 1, 1909, P. L. 79, for the two-thirds he bought from his brothers, but not for the one-third he took himself as heir.

2. In such case, the defendant, as to the one-third interest, cannot set up against the executor the outstanding title of a mortgagee under a mortgage created by himself, inasmuch as a mortgage is not a conveyance of land, but a mere security for the payment of a debt.

3. The rule that a plaintiff in ejectment must recover upon the strength of his own title, and not through the weakness of the defendant, does not apply in such a case.

Motion for judgment *n. o. v.* C. P. No. 2, Phila. Co., March T., 1920, No. 4880.

*J. R. Guckes*, for plaintiff; *F. J. Kraus* and *J. W. Speckman*, for defendant.

GORDON, J., June 20, 1923.—This case is before the court on a motion for judgment *non obstante veredicto*. The proceeding is in ejectment. The plaintiff is executor under the will of Mary Maier, deceased, and the defendant is in possession of ten pieces of real estate, situated in the City of Philadelphia, of which Mary Maier died seized.

The facts were not in dispute at the trial, and the trial court gave binding instructions for the defendant as to an undivided two-thirds interest, as tenant in common of the real estate, and for the plaintiff as to the remaining one-third. The defendant has now filed this motion for judgment *non obstante veredicto* as to the entire real estate.

The evidence disclosed the following facts: Mary Maier died on July 9, 1913, a widow, without children or lineal descendants. A diligent search disclosed no will, and certain persons residing in the City of Philadelphia took out letters of administration, claiming to be her heirs. Shortly thereafter, the defendant in this proceeding, Gustav Albert Stahl, appeared and claimed that he and his two brothers, Karl F. and Johann W. Stahl, were the next of kin and the heirs of Mary Maier. After a contest in the Orphans' Court of Philadelphia, the contention of the defendant and his two brothers was upheld and they were adjudicated to be the rightful heirs of the deceased. The defendant thereupon went into possession of the properties in question for himself and his two brothers, who were residing in Germany. He remained in possession as tenant in common with his brothers until June 7, 1915, when he purchased his brothers' interests for $9000, thereby acquiring title to the entire property, including an undivided one-third interest as heir-at-law of Mary Maier, and the undivided two-thirds interests of his brothers as purchaser. In order to effect this purchase, the defendant mortgaged the entire property for $9000, and on Aug. 30, 1915, he placed another mortgage for an additional $5000 with the Cannstatter Building and Loan Association. In each instance the mortgage was given upon the entire title. The latter of these two mortgages has been reduced by payments on account and by the payment of regular monthly dues. It is conceded that these transactions— the purchase by the defendant of his brothers' interests and the mortgaging

of the properties—were done in good faith and for valuable considerations. No where in the case is there any intimation that the conduct of the defendant in connection with the purchase of his brothers' interests and the mortgaging of the properties is open to suspicion. In 1920, a will was discovered which Mary Maier had executed in 1908, and, after a contest, this was probated. In this will Mary Maier divided her estate among certain designated charities and fraternal organizations. The will also contained a positive direction to the executor to sell the real estate in question.

Upon these facts the trial court directed a verdict, as indicated above, in favor of the defendant for the two-thirds undivided interest as tenant in common which he held by purchase from his brothers, and in favor of the plaintiff for the one-third undivided interest which he held by descent as one of the heirs of Mary Maier. It is now contended by the defendant that a verdict should have been directed in his favor for the entire title to the properties. The question thus raised is dependent upon the interpretation which is to be placed upon section 1 of the Act of April 1, 1909, P. L. 79, which reads as follows: "That where the last will of any decedent shall not have been offered for probate within three years from the date of the death of the testator, the same shall be void and of no effect against a *bona fide* conveyance or mortgage of the real or personal estate of the said decedent, duly recorded before the date of the offering of said will for probate: Provided, that this act shall not take effect, as to wills which would be sooner affected, until the expiration of one year from the date of its passage."

Prior to the passage of this act, the discovery of a will disposing of property contrary to the intestate laws operated to defeat not only the heir in possession, but any grantee or mortgagee in the line of conveyance from the heir. This act was designed to relieve *bona fide* purchasers and mortgagees of the hardships resulting from this rule. It will be observed that the act does not purport to confirm the title of the heir who takes in the absence of a will. The rule which existed before the passage of the act is still in force, so far as it concerns the first taker. The act does not confirm his title in any particular at the end of three years after the death. Therefore, whatever the defendant here took and still holds as heir of Mary Maier is not affected by the Act of 1909. It is for this reason that the trial judge directed the verdict already indicated.

It is conceded that the plaintiff has standing to bring this action under the direction to sell contained in the will, and that ejectment will lie for an undivided interest as tenant in common. It is earnestly contended by the defendant, however, that, inasmuch as this is an action in ejectment, the plaintiff must recover upon the strength of his own title and not upon the weakness of the defendant; that one in possession of real estate has title against all the world except the true owner; that, under this fundamental principle, it has been repeatedly held that a defendant in ejectment can defeat a plaintiff by showing a better title, not only in himself, but in third persons; and that by mortgaging the properties in question the defendant has placed such a title in the mortgagees, by virtue of the operation of the Act of 1909, as defeats the right of action of the plaintiff. It is argued that a mortgage is in its true nature an absolute conveyance with a clause of defeasance; that the mortgagee has a right of entry at any time, either before or after condition broken, and that the title of defendant's mortgagee, therefore, defeats the plaintiff's action.

We have given careful consideration to this argument, which has been presented with unusual force and ingenuity by learned and able counsel. We

3 D. & C.

cannot agree, however, with the conclusion which it reaches. It overlooks the fundamental nature of the modern mortgage. It is no longer considered as an absolute conveyance with a clause of defeasance. The prevailing view is that a mortgage is merely security for a debt, though in form it may appear as an absolute conveyance. In Newell on Ejectment (1892), 656, at section 19, it is said that: "A mortgage, even after condition broken, is not an absolutely outstanding title of which a stranger can take advantage and defeat a recovery in ejectment by the mortgagor or one claiming under him. It is available for the mortgagee or his tenant, but not for the tenant of the mortgagor."

In Den *v.* Dimon, 5 Halsted, 157 (N. J. L.), the court said: "Now, it will readily be admitted as a good general rule that a plaintiff in ejectment cannot recover premises, the title to which is in a third person and not in himself; but this rule never obtains where the outstanding title is a mortgage. For, though such mortgage be a title at law for the mortgagee or his representatives, if he or they come into a court of law to enforce it; yet until they do enforce it by action or entry, it is so far from being a title that the mortgagor is considered in law the owner of the land."

In Collins *v.* Torry, 7 Johns. (N. Y.) 278, 282, the Supreme Court of New York said: "A mortgage, before foreclosure or entry, is not now regarded as a legal title which a stranger can set up. It can only be used by the mortgagee and his representatives."

To the same effect is Hitchcock *v.* Harrington, 6 Johns. (N. Y.) 290.

In Stafford *v.* Wheeler, 93 Pa. 462, our Supreme Court, speaking through Mr. Justice Paxson, held that in an action of ejectment, a defendant in possession, who had mortgaged a farm in dispute, could not set up the outstanding title of the mortgagee. This ruling, however, involved fraud on the part of the defendant in creating the mortgage, and cannot be said to be controlling in the consideration of the present question. Indeed, no case in Pennsylvania has been called to our attention in which the right of a defendant in possession to set up the title of a mortgagee to defeat the title of a plaintiff has been sustained, and we believe that such is not the law. To permit a mortgagor to set up a mortgage title which he himself has created would enable him to give a better title than he possessed. This would result in grave injustice. The Act of 1909 was carefully drawn to exclude from its operation persons in the position of this defendant. It is a special protection given to *bona fide* purchasers and mortgagees, and should be interpreted so as to do as little violence as possible to the wishes of a testator. The mortgage which the defendant here seeks to set up to defeat the plaintiff's right could not have been set up prior to the passage of the Act of 1909. Before that date, the mortgagee's title would not have been superior to that of the plaintiff. The act should be so interpreted as to preserve only those rights which are specifically protected by it, and the mortgagee's rights under it are not disturbed by this decision. Had the legislature intended to permit an heir to defeat the rights of devisees by the creation of a mortgage, it would have said so in clear and unequivocal terms. It has not done so, and we are not inclined to read this intention into the act.

We see no error, therefore, in the verdict which was directed by the trial court, and the motion for judgment *non obstante veredicto* is overruled.